# United States Court of Appeals
## For the First Circuit

No. 13-2517

VAQUERÍA TRES MONJITAS, INC.; SUIZA DAIRY, INC.,

Plaintiffs, Appellees,

v.

MYRNA COMAS PAGAN, Secretary of the Department of Agriculture for the Commonwealth of Puerto Rico; EDMUNDO ROSALY, Administrator of the Office of the Milk Industry Regulatory Administration for the Commonwealth of Puerto Rico,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Howard, Circuit Judges.

Edward W. Hill for appellants.
Rafael Escalera Rodríguez, with whom Amelia Caicedo Santiago, Carlos M. Hernández Burgos, and Reichard & Escalera were on brief, for appellees.

April 3, 2014

**LYNCH, Chief Judge**. Understandably concerned by language in a district court order which opined that Puerto Rico had waived its Eleventh Amendment immunity by entering into a Settlement Agreement, the Commonwealth's milk regulatory agency (Spanish acronym "ORIL") appeals. The court's language on that immunity was in no sense necessary to the approval of the Settlement Agreement or to entry of the judgment. In the motion seeking approval, no party raised any Eleventh Amendment issue, nor was such an issue briefed or argued. The statement is contrary to the principle of constitutional avoidance. We conclude that the language at issue is merely a statement of dicta and not a judgment. The statement is wholly gratuitous, does not respond to any argument made in those proceedings, and has the obvious effect of causing confusion. We strongly suggest to the district court that it issue an amended order deleting the language. We otherwise dismiss the appeal for want of appellate jurisdiction.

I.

The facts of this long running case are found in more detail in Puerto Rico Dairy Farmers Association v. Comas Pagan, ___ F.3d __ (1st Cir. Apr. 3, 2014), and in our court's previous decision, Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464 (1st Cir. 2009), reh'g en banc denied, 600 F.3d 1 (1st Cir. 2010), cert. denied, 131 S. Ct. 2441 (2011). We assume familiarity with those decisions.

-2-

On October 29, 2013, the plaintiffs Suiza Dairy, Inc. ("Suiza") and Vaquería Tres Monjitas, Inc. ("VTM"), and the government defendants, Myrna Comas Pagan, the Secretary of the Department of Agriculture for the Commonwealth of Puerto Rico, and Edmundo Rosaly, the Interim Administrator of ORIL (the Office for the Milk Industry Regulatory Administration), filed with the district court for its approval the Final Settlement Agreement and Memorandum of Understanding Between the Parties ("Agreement"), executed that day.

We briefly describe the substance of the settlement. The Agreement provided for the adoption and implementation of Regulation 12, which governs pricing mechanisms in Puerto Rico's milk industry. In effect, Regulation 12 establishes the price margins for all players in the industry. As part of the implementation of Regulation 12, ORIL pledged to conduct a comprehensive study of the milk industry within twelve months of the effective date of the Agreement.

Under the Agreement, the government of Puerto Rico is also obligated to create a "Special Fund to promote the efficiency of the Milk Market in Puerto Rico." In addition to the "Special Fund," the government agreed to contribute funds over four years to Suiza and VTM as part of a regulatory accrual mechanism designed to allow the processors to recoup a fair rate of return on their products.

We turn from this substantive summary to the Agreement's precise language. The Agreement first recited that there was no concession of the validity of the plaintiffs' claims or of any court order entered and that the effect of entry of the order would be dismissal of the case with prejudice. The substance of the Agreement was found in covenants, contained in subparagraphs 3 through 17 of the paragraph. The Agreement included a final paragraph stating the parties' rights moving forward:

> The terms and conditions of this settlement will be incorporated into the firm, final and unappealable judgment to be issued by the District Court. That Judgment will be equally binding to and enforceable against all signatories of this Agreement and the Government of Puerto Rico. All such parties hereby <u>waive any defense they may have to the enforcement of this Agreement</u>.

(emphasis added).

At the hearing on whether to enter the Settlement Agreement as a judgment, counsel for Suiza added that although the Agreement did not contain an explicit clause regarding contempt, the plaintiffs waived all attempts to find the government defendants in contempt. Plaintiffs did not assert that the Commonwealth had waived its immunity either in the Agreement or specifically in the Agreement's "waive any defense" clause. At no time did any issue concerning the Commonwealth's Eleventh Amendment

-4-

immunity come up at that hearing or in the settlement papers before judgment was entered.[1]

The district court's order, entered on November 7, 2013, began with a paragraph identifying those who were parties to the Final Settlement Agreement. The second paragraph approved and incorporated all of the covenants with numbered paragraphs, as follows:

> 1. All the covenants of the Settlement Agreement executed on October 29, 2013 are incorporated herein.
>
> 2. The Court has original federal jurisdiction in a federal question civil action, pursuant to 28 U.S.C. § 1331, and retains jurisdiction for compliance purposes, as to the terms and conditions of the Settlement Agreement of October 29, 2013 to ensure proper[] and timely implementation. The Court, hence, shall retain federal jurisdiction to enforce the Settlement Agreement until such time as the Commonwealth of Puerto Rico, the Puerto Rico Department of Agriculture and ORIL, as well as all signatory parties have complied fully and effectively with the Settlement Agreement, and have maintained such compliance for no less than four consecutive years, that is, December 31, 2017.
>
> 3. The Commonwealth of Puerto Rico through the Secretary of Justice, the Puerto Rico Department of Agriculture and ORIL and its highest executives, shall inform their

---

[1] The Commonwealth of "Puerto Rico enjoys the same immunity from suit that a State has under the Eleventh Amendment." Maysonet-Robles v. Cabrero, 323 F.3d 43, 53 (1st Cir. 2003). It has consistently stated its Eleventh Amendment immunity at all stages of the litigation. See Vaquería Tres Monjitas, Inc., 587 F.3d at 477-80.

successors as to the terms and conditions of this Settlement Agreement, particularly those economic terms and covenants that may remain to be fulfilled.

4. The Commonwealth of Puerto Rico, the Puerto Rico Department of Agriculture and ORIL shall require compliance with the Settlement Agreement by all of its agencies, departments, officials, employees, and their respective assigns and successors.

5. The Settlement Agreement of October 29, 2013 does not include the Puerto Rico Dairy Farmers Association ("PRDFA"), hence, the PRDFA may proceed with their litigation filed under Civil No. 08-2191 (DRD).

(footnote and internal citation omitted).

After the numbered provisions of the second paragraph, there is a third paragraph, which is the source of Puerto Rico's concern:

The Court is of the opinion that the voluntary signatures of the well represented authorized agents of the Commonwealth of Puerto Rico, the Puerto Rico Department of Agriculture and ORIL, constitutes a pellucid waiver of the Eleventh Amendment, as all the parties clearly stated that "[a]ll such parties hereby waive any defense they may have to the enforcement of this Agreement." . . . See also Watson v. Texas, 261 F.3d 436 (5th Cir. 2001); Ellis v. University of Kansas Medical Center, 163 F.3d 1186 (10th Cir. 1999).

Unlike the earlier language, which imposes requirements consistent with the covenants of the Agreement, this paragraph signals merely that it states the view of the court.

The final paragraph of the order closes the case for statistical purposes and notes that the court will "retain

jurisdiction for compliance purposes of all the covenants of the Settlement Agreement . . . or any other related matter and/or remedy related to the full compliance of the Settlement Agreement."

On December 5, 2013, ORIL filed a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e), in which it argued that there had been no Eleventh Amendment waiver and sought the elimination of the Eleventh Amendment paragraph in the district court's November 7 Order. ORIL objected to the district court's sua sponte statements of opinion on Eleventh Amendment waiver.[2] ORIL stressed that it had asserted its Eleventh Amendment immunity continuously throughout the litigation and never waived it. Not only did ORIL not intend to waive its immunity, it argued, but the language of the Settlement did not contain the "required unequivocal language" to support an Eleventh Amendment waiver finding. In its motion, ORIL characterized the monetary relief included in the Settlement as an Ex parte Young-type remedy, see 209 U.S. 123 (1908), which did not imply a broader Eleventh Amendment waiver. It cited Frazar v. Gilbert, 300 F.3d 530, 549-50

---

[2] In an effort to reap a windfall, Suiza opposed ORIL's Rule 59(e) motion even though it had not argued for or requested the district court's Eleventh Amendment statement. In its newly adopted position, Suiza argued that the Settlement "contemplated enforcement proceedings on which the District Court could provide remedies for non-compliance" with the Agreement, and that the "waive any defense" language included a waiver of Eleventh Amendment immunity.

(5th Cir. 2002), rev'd on other grounds, Frew ex rel. Frew v. Hawkins, 540 U.S. 431 (2004).

The district court issued an Opinion and Order on December 30, 2013, denying ORIL's Rule 59(e) motion and reiterating its view that the Agreement constituted an Eleventh Amendment waiver. The rejection of reconsideration, said the court's statement, was based on the "waive any defense" clause of the Settlement Agreement, along with the fact that the Agreement provided for public funds to be paid to the milk processors as part of the Settlement's regulatory solution.

We stress ORIL disagrees only with the court's statement on Eleventh Amendment waiver in its opinion, and otherwise agrees with the court's approval of the Settlement Agreement.

II.

First, we think it is plain that the Eleventh Amendment waiver statement in the unnumbered third paragraph in the district court's order is pure dicta. See Municipality of San Juan v. Rullan, 318 F.3d 26, 28 n.3 (1st Cir. 2003) ("Dicta comprises observations in a judicial opinion or order that are 'not essential' to the determination of the legal questions then before the court." (quoting Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992))).

The district court's approval and incorporation of the Settlement Agreement between the parties did not in any way require

addressing or resolving Eleventh Amendment issues.  As the parties

agree, both the approval Order and the underlying Agreement can

stand without such a resolution.[3]  That it was not necessary is

amply demonstrated by the Supreme Court's decision in Frew, 540

U.S. 431.  There, the Court considered whether a district court

could enforce a consent decree entered into by state officials

without violating the Eleventh Amendment.  There, as here, the

state officials did not challenge the validity of the underlying

agreement.  Id. at 437-38.  The Court concluded that enforcement

was proper because the consent decree and the requested remedy were

enforceable under Ex parte Young.  Id. at 436-37.  It declined to

even address whether there had been an Eleventh Amendment waiver,

and noted that "[w]hen a federal court has entered a consent decree

under Ex parte Young, the law's primary response to these concerns

has its source not in the Eleventh Amendment but in the court's

equitable powers and the direction given by the Federal Rules of

Civil Procedure."  Id. at 441.

Second, at the very least, the district court's

unprompted expression of opinion about the Eleventh Amendment runs

afoul of the mandated adherence to the general principle of

constitutional avoidance.  Under this doctrine, "federal courts are

---

[3]  The court retained jurisdiction over the case for compliance purposes.  The district court's ability to enforce the Settlement going forward also does not require an Eleventh Amendment holding at this stage.

-9-

not to reach constitutional issues where alternative grounds for resolution are available." Am. Civil Liberties Union v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013). The canon of constitutional avoidance binds both this court and the district court. See Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 508 (1st Cir. 2011). The district court's Eleventh Amendment statement unnecessarily reached out into and purported to opine on a difficult and consequential constitutional issue.

There is particular reason to practice avoidance of unnecessary statements about Eleventh Amendment issues. The Eleventh Amendment "largely shields States from suit in federal court without their consent." Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994). The "central purpose" of Eleventh Amendment immunity is "to 'accord the States the respect owed them as' joint sovereigns," Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 765 (2002) (quoting P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993)), and it is "concerned not only with the States' ability to withstand suit, but with their privilege not to be sued," Metcalf & Eddy, Inc., 506 U.S. at 147 n.5.

In light of the Eleventh Amendment's importance to protecting both the state fisc and the dignity of the state, Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 64-65 (1st Cir. 2003), the standard for finding a waiver is a stringent one.[4] We will not find waiver unless it is "stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" Edelman v. Jordan, 415 U.S. 651, 673 (1974) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)); see College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76 (1999). Apart from a clear declaration of waiver, a state may also waive

---

[4] We note, without addressing any substantive question of Eleventh Amendment waiver, the district court's citation of Ellis v. University of Kansas Medical Center, 163 F.3d 1186 (10th Cir. 1998), in its statement does not support the court's language. Ellis states:

> [T]he fact that the defendants here entered into a settlement agreement with Ellis does not act as a waiver of the defendants' constitutionally protected immunity because the settlement agreement does not itself indicate, nor does the record otherwise reflect, an unequivocal intent to waive the immunity by the agreement. See Johns v. Stewart, 57 F.3d 1544, 1554 (10th Cir. 1995) (because constructive consent is insufficient, state's partial settlement does not constitute a waiver of Eleventh Amendment immunity in absence of unequivocal expression of a waiver); see also Saahir v. Estelle, 47 F.3d 758 (5th Cir. 1995) (state's participation in settlement agreement not sufficient to waive its sovereign immunity).

Id. at 1195. And Ellis holds the agreement could be enforced under Ex parte Young. Id. at 1198. Watson v. Texas, 261 F.3d 436 (5th Cir. 2001), also cited by the district court, is likewise distinguishable and involves different settlement language.

the Eleventh Amendment "by consent to or participation in a federal program for which waiver of immunity is an express condition," or by "affirmative conduct in litigation." New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004).

Suiza has conceded the district court's Eleventh Amendment statement was not necessary to the judgment. We construe the statement as being merely an expression of opinion. Cf. Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Colombani, 712 F.3d 6, 11 (1st Cir. 2013) (construing language in a district court order as not being final order). Consistent with our construction, we strongly suggest the district court strike the statement. The statement has resulted in considerable confusion and has unnecessarily prolonged this litigation. Cf. Sony BMG Music Entm't, 660 F.3d at 508 (vacating and remanding part of a district court's judgment where "[a] decision on a constitutional due process question was not necessary, was not inevitable, had considerable impermissible consequences, and contravened the rule of constitutional avoidance").

Part of the obligation of federal appellate courts is not to engage in premature assessment of issues not presented by appeal from a judgment. As former Circuit Judge, now Justice, Breyer said in United States v. Ottati & Goss, Inc., 900 F.2d 429, 443 (1st Cir. 1990), we do not hear appeals from statements made by district courts which are not, "in any sense, necessary to the [district

-12-

court's] judgment." See also In re Williams, 156 F.3d 86, 90 (1st Cir. 1998) ("[F]ederal appellate courts review decisions, judgments, orders, and decrees -- not opinions . . . ."); accord Harrison v. United States, 284 F.3d 293, 302 (1st Cir. 2002) (because the district court did not need to reach the issue of damages, any findings regarding damages are dicta).

### III.

The case will be remanded to the district court in accordance with this opinion. We dismiss the appeal for want of appellate jurisdiction. Costs are awarded to ORIL.